IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02514-MSK

NORMAN GARCIA,

    Applicant,

v.

FRED FIGUEROA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,
JOHN SUTHERS,

    Respondents.
_____

**ORDER DENYING WRIT OF HABEAS CORPUS**
_____

Before the Court is an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** filed by Norman Garcia ("Applicant") [Docket No. 3; Filed December 3, 2007]. Respondents filed an Answer to the Habeas Petition on March 24, 2008 [Docket No. 15] and Applicant filed a Reply to Answer on April 7, 2008. [Docket No. 17]. The matter has been fully briefed and is ripe for resolution. The Court has considered the pleadings, the state court record, and the applicable case law. For the reasons set forth below, the Application is **DENIED**.

**I.    Background and Procedural History**

Applicant is appealing his convictions for two counts of sexual assault on a child, in violation of Colo. Rev. Stat. § 18-3-405(1), two counts of sexual assault of a child by a person in a position of trust, in violation of Colo. Rev. Stat.§ 18-3-405.3(1)(2), and two counts of sexual assault on a child as part of a pattern of abuse, in violation of Colo. Rev.

1

Stat. § 18-3-405(1)(2)(d). v. I at 1-3, 131.[1] Applicant was convicted by a jury verdict in Denver District Court and was sentenced to six concurrent terms of imprisonment: six years to life on each of the sexual assault on a child counts; twelve years to life on each of the sexual assault of a child by a person in a position of trust; and twenty-four years to life on each of the sexual assault of a child as part of a pattern of abuse counts. *Id.* at 122-27, 128-31. At the time of the filing of the Application, Applicant was incarcerated at the North Fork Correctional Facility in Sayre, Oklahoma. *Application* [#3] at 9.

The following facts were established at trial: in December 2001, Anita Ramos Arambula lived at 1833 Hooker Street with her three children, Norma Jean, Amber and Alexandria, her sister, Applicant and his wife, his son, brother and the brother's wife. v. 5 at 63, 65. Applicant is Anita's half brother. *Id.* at 64. In February 2004, at the time of the trial, Amber was thirteen years old and Norma Jean ten years old. *Id.*

Norma Jean and Amber were often alone with Applicant. *Id.* at 68. On or about December 20, 2001, Anita was Christmas shopping with Amber when her daughter told her about sexual contact between her and Applicant. *Id.* at 69-71, 72. Amber stated that she and Applicant performed oral sex on each other, that Applicant made her watch pornographic films, licked her private parts and forced her to lick his penis. *Id.* at 72-73. While this conversation was taking place, Norma Jean was in the company of the Applicant. Anita called him and told him to bring Norma Jean home immediately. *Id.* at 73-74. After the call, Applicant said to Norma Jean, "I hope they didn't find out." *Id.* at 61. He

---

[1] The state court records consists of a volume of pleadings from Denver District Court (v. 1), seven volumes of transcripts, and three envelopes of sealed materials, including Applicant's presentence report.

told her that if anybody found out he would go to jail. *Id.*

Once they arrived at their residence, Anita questioned her daughter Norma Jean about Applicant's sexual conduct. Norma Jean described the same types of molestation committed by Applicant as her sister did. She added that Applicant would put on rubber gloves and penetrate her anus with his finger. *Id.* at 76-77. When Anita accused him of these acts, Applicant denied that he had engaged in any of the conduct alleged by the two girls. *Id.* at 78.

Amber and Norma Jean testified at trial. They asserted that Applicant touched their breasts and vaginal areas while his pants were down to his knees. *Id.* at 18. Amber was nine years old at the time and Norma Jean seven. *Id. at* 20. Applicant also sucked their breasts and vaginas. *Id.* at 28, 33, 55. He made them watch pornographic movies and then perform the acts depicted in the movies. *Id.* at 21, 55-56. Applicant also rubbed strawberry cream on his penis and then made them perform oral sex. *Id.* at 21-2, 27, 28.

Mark Allen, a detective with the Denver Police Department, interviewed Amber and Norma Jean at the Family Crisis Center, a facility where children who are abuse victims are temporarily placed pending the result of an investigation into the abuse. *Id.* at 142, 149. Allen showed the two girls body diagrams and asked them to identify which parts of their bodies were touched by Applicant. *Id.* at 144-147. The girls made markings on the diagram on the intimate body parts. *Id.* The girls also described Applicant's molestation of them in detail. v. 6 at 6-9.

Allen also interviewed Applicant at the Family Crisis Center. v. 5 at 148. The conversation was videotaped. *Id.* Applicant was not handcuffed. *Id.* Allen's gun was not

3

drawn during the conversation and he did not engage in any threatening conduct or use physical force against Applicant. *Id.* at 150. Allen informed Applicant that he did not have to talk to him, but Applicant said that he wanted to talk because "we have a problem and I wish to get this cleared up right now." Transcript at 1.[2]

    Applicant asserted that these allegations occurred because Amber and Norma Jean were rivals for his affection. *Id.* at 4, 6, 8. He said he often bought intimate wear and other gifts for the girls. *Id.* at 23-24. He thought they were "coached" to make the accusations against him. *Id.* at 21. He asserted that Norma Jean would often sleep with Applicant and his wife and that Norma Jean frequently sat on his lap. *Id.* Applicant stated that Amber made false accusations against him because of her jealousy of Norma Jean and "splitting us up." *Id.* at 8, 9. He described his relationship with Norma Jean as like a father-daughter. *Id.* at 12. He said Norma Jean engaged in "sexualized behavior." *Id.* at 17. He asserted that the girls would straddle his legs and rub him on the leg. *Id.* at 60. He denied watching pornographic movies with the girls, but he admitted that one time he inadvertently let them view a "sensual" movie. *Id.* at 19, 20, 33. He was alone with the girls twice a week. *Id.* at 22. He denounced the allegations, and said he would not be a father figure for the girls anymore. *Id.* at 23. He repeatedly asked the detective if the allegations were true, why did the girls continue to go to his upstairs bedroom. *Id.* at 23, 45, 46, 51, 52, 53, 54. He said he never touched either of them sexually and "didn't do nothing." *Id.* at 26, 27, 28. According to Applicant, "[n]othing really happened ... they sat on my lap ... I hugged them ... I thought that would be innocent." *Id.* at 33. He said nobody told him to stop this

---

    [2] The transcript of the videotaped interview of Applicant is in one of the sealed envelopes in the state record. It is in the envelope marked "misc filings."

behavior. *Id.* If he touched the girls improperly, he was sorry. *Id.* at 41, 46.

Near the end of the interview, Applicant acknowledged or strongly hinted that there was some sexual conduct between him and the girls. He said that sometimes "it got out of hand," "they'd be uncomfortable" and he "didn't want to push them off." *Id.* at 60-61. He admitted that Norma Jean touched his penis and "gooey stuff" came out, but he denied her claim that she was forced to perform oral sex. *Id.* at 61-62. He repeatedly stated that things got out of hand and "[i]t wasn't something that was planned." *Id.* at 63. He said the girls would pull down each other's pants and he would know then that something was going to start. *Id.* at 66-67. Applicant stated that in the matter of responsibility, "she's the one," but meaning both girls. *Id.* at 74-75. At the conclusion of the interview, Applicant said to the detective:

> Don't leave me. I just, I just, I don't know. I just want you to understand that I try to, I try to get away from it, I did. I did get away from it. I did. You got to believe me. On that one, you got to believe me. I did. I didn't want it no more. There was nothing I could do. What, what can you do.

*Id.* at 75.

As noted above, the jury found Applicant guilty on six counts of sexual assault. v. 6 at 62-63. Following his convictions, Applicant appealed to the Colorado Court of Appeals ("CCA"), raising two grounds for relief: (1) the trial court erred in denying his motion for disclosure of juror information without a hearing; and (2) the trial court erred in denying his motion to suppress. *Answer* [#15] Ex. A at 2. His convictions were affirmed by the CCA in *People v. Norman Garcia*, No. 04CA1066 (Colo. App. Oct. 26, 2006)(unpublished decision). Applicant filed a motion for rehearing in the Colorado Court of Appeals. *Answer* [#15] Ex. E. On August 20, 2007, the motion was denied. *Id.* Ex. F. In his Application,

Garcia asserts that he sought review in the state's highest court on direct appeal, but does not indicate whether he filed for a petition for writ of certiorari in the Colorado Supreme Court. *Application* [#3] at 3.

On December 3, 2007, Applicant filed the Application for a Writ of Habeas Corpus in this Court. *Application* [#3]. Applicant raises one issue for relief, that the Court find that he "was in a custodial setting and not afforded his Miranda rights" during his interview with the detective. *Id.* at 9.

### III. Analysis

#### A. Applicant's Status

Applicant is proceeding *pro se*. Therefore, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. *Hall*, 935 F.2d at 1110.

#### B. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to clearly established federal

law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

### C. Exhaustion of State Remedies

As a threshold matter, Respondents argue that the Applicant has failed to exhaust his *Miranda* claim. "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation omitted). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

In order to meet the exhaustion requirement, the claim advanced by the federal habeas petitioner must have been submitted to the state courts as one arising under the federal constitution. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). The decision of the last state court to which the petitioner submitted his claims must fairly appear to rest on issues of federal law or to be interwoven with federal law. *Id.* In *Duncan v. Henry*, 513 U.S. 364, 366 (1995), the Supreme Court recognized that an applicant must alert the state court to the federal constitutional nature of his claims in order to properly exhaust his claims. That is, "mere similarity of claims is insufficient to exhaust," and "[i]f a habeas petitioner wishes to claim that [a ruling] at a state court denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* In order to satisfy the exhaustion requirement, the claim must be presented under federal law not only to the trial court, but also the state's intermediate court as well as its supreme court. *O'Sullivan*, 526 U.S. at 845-87. The petitioner must have invoked "one complete round of the state appellate review process." *Id.* at 845.

The Applicant has the burden of showing that he has exhausted all available state remedies. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992); *Trimble v. Trani*, No. 09-cv-01943-BNB, 2010 WL 785866, at * 2 (D. Colo. Mar. 8, 2010). Applicant concedes that he did not file a petition for writ of certiorari with the Colorado Supreme Court. *Reply* [#17] at 2-3. Applicant only pursued his claims to the Colorado Court of Appeals. However, Applicant argues that he was not required to seek review to the Colorado Supreme Court. Effective May 18, 2006, the Colorado Supreme Court instituted a new rule regarding the

exhaustion requirements for habeas cases. Colorado Appellate Rule 51.1 provides that:

> **(a) Exhaustion of Remedies.** In all appeals from criminal convictions or post-conviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.
>
> **(b) Savings Clause.** If a litigant's petition for federal habeas corpus is dismissed or denied for failure to exhaust state remedies based on a decision that this rule is ineffective, the litigant shall have 45 days from the date of such dismissal or denial within which to file a motion to recall the mandate together with a writ of certiorari presenting any claim of error not previously presented in reliance on this rule.

The rule states that a litigant need not appeal to the Colorado Supreme Court in order to satisfy the exhaustion requirement. However, Applicant cannot take advantage of this rule because it was not in effect at the time his claim was pending in state court. *See Quintano v. Archuleta*, No. 06-cv-02406-CMA-CBS, 2008 WL 5064270, at *4 n.1 (D. Colo. Nov. 24, 2008); *Smith v. Milyard*, No. 06-cv-00783-WDM-BNB, 2008 WL 2037722, at *5 n. 2 (D. Colo. Apr. 18, 2008); *Collie v. Estep*, No. 06-cv-00795-PSF-BNB, 2007 WL 2472053, at *16 n. 5 (D. Colo. Aug. 28, 2007); *but see, e.g. Tyler v. Arellano*, 08-cv-01368-ZLW-BNB, 2008 WL 4974419, at *6 (D. Colo. Nov. 19, 2008)(holding that Rule 51.1 is retroactive).[3] Therefore, the remedy of Supreme Court review was available to Applicant at the time of his post-conviction application, but he did not seek such review. He failed to exhaust his claim.

On habeas review, the federal court will not consider issues that have been

---

[3] The Tenth Circuit Court of Appeals has not determined whether this Rule is retroactive. *See Mitchell v. Watkins*, 252 Fed. Appx. 874, 877 (10th Cir. Oct. 25, 2007) (noting that circuit has not considered the impact of 51.1 on exhaustion in habeas proceeding); *Berg v. Foster*, 244 Fed. Appx. 239, 246-7 (10th Cir. Aug. 6, 2007)(declining to address the issue).

defaulted in state court on an independent and adequate state procedural ground. *Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir. 1998). A state procedural ground is independent if it relies on state law as the basis for its decision. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). For a state ground to be adequate it must be "strictly or regularly followed" and "evenhandedly applied to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982).

Under Colorado law, any petition for writ of certiorari must be filed with the Colorado Supreme Court within forty-six days of the Court of Appeals' decision. Colo. R. App. P. 52(b)(3). The appellate court's decision on Applicant's claims was issued on October 26, 2006. *Answer* [#15], Ex.D. Applicant, therefore, cannot now pursue his claim in the Colorado Supreme Court. Likewise, Applicant is time-barred from filing a post-conviction petition in Colorado state court. A post-conviction motion must be filed within three years of the date of conviction. Colo. Rev. Stat. § 16-5-402. Applicant was convicted on February 6, 2004. v. 6 at 62. Any motion filed in state court now would be untimely. The time limits of § 16-5-402 are a "firmly established" and "regularly followed" procedural rule. *Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995); *Holloman v. Ortiz*, No. 06-cv-01226-WYD, 2009 WL 798836, at *12 (D. Colo. Mar. 24, 2009).

Applicant's claim would also be barred as successive under Colo. R. Crim. P. 35(c)(3)(VI). That rule states that a court "shall deny any claim that has been raised in a prior appeal or postconviction proceeding on behalf of the same defendant." Colo. R. Crim. P. 35(c) is an adequate and independent state ground. *Huynh*, 2009 WL 798846, at *12; *Holloman*, 2009 WL 798836, at *12. Therefore, Applicant has procedurally defaulted on his claim and cannot obtain federal habeas relief.

D. Merits of *Miranda* Claim

*Suppression Hearing*

Even though it believes the unexhausted claim to be procedurally barred, the Court will address the merits of Applicant's claim.

Prior to trial, Applicant filed a motion to suppress the statements he made to Detective Allen during the interview at the Family Crisis Center. v. 1 at 33-34. Applicant alleged that he was not advised of his *Miranda* rights prior to questioning by the police. *Id.* at 34. The trial court held a hearing on the motion. Before the hearing, the trial court reviewed the videotape of Applicant's interview with the police. At the hearing, the prosecution presented the testimony of Raymond Gallardo, an officer with the Denver Police Department. He stated that on December 20, 2001 he went to 1831 Hooker Street, the residence of the victims and Applicant, on a report of a sexual assault on a child. Supp. v. 1 at 5.

Gallardo spoke with Applicant and handed him a "Request to Appear" form asking that he appear at the Denver Department of Social Service Family Crisis Center the following day. *Id.* at 6; *Answer* [#15] Ex. D at 2. Applicant signed the "Request to Appear" form. Supp. v. 1 at 7.

Applicant appeared at the Family Crisis Center the next day and was interviewed by Detective Allen. At the beginning of the conversation, the detective stated "I want to let you know that if you don't want to talk to me, you don't have to." Transcript at 1. Applicant responded, "Oh I want to. Especially if you're a detective, because I thought I was going to talk to a social worker ... I'd rather talk to a detective. The thing is, is [sic] we have a problem and I wish to get this thing cleared up right now." *Id.*

11

During the interview, Applicant was not handcuffed and not told by Allen that he could not leave. v. 2 at 19. Detective Allen was dressed in plain clothes. He never threatened Applicant or displayed a weapon. Near the end of the interview, on a number of occasions, Applicant pleaded with Detective that he not leave the room: "No, please, don't leave me alone now. I need you here." ; "look don't leave me"; "I wish for you to stay"; "Don't leave." v. 5 at 148-51; Transcript at 74-75.

Applicant testified at the hearing. According to Applicant, when the police arrived at the house on Hooker Street, an officer handed him a form. v. 2 at 9. He was told by the officer that he had to sign the form or he would be arrested. *Id.* Garcia asked the officer whether he needed a lawyer and he said he did not. *Id.* at 10-11, 49. Applicant went to the Family Crisis Center the next day with his wife, Mary, and his sister-in law, Maureen. *Id.* at 11. Detective Allen introduced himself to Garcia and escorted him into a separate room. *Id.* at 12. Mary and Maureen were not allowed in the room. *Id.*

Applicant asserted that before the interview began he told Allen that he wanted an attorney. *Id.* at 13. His sister-in law testified that she overheard Garcia's request for an attorney. Garcia asserts that in response, Allen said, "[n]o you don't. We just want to get a feel for the house." *Id.* at 42, 50. During the entire interview process, Garcia felt detained and that he was not free to leave. *Id.* at 13-14. He was never advised of his rights. *Id.* at 15. He acknowledged that Allen did not threaten him, but promised that if Garcia apologized to the victims, "we could go home and get our life back on the road again and begin the "healing process." *Id.* at 14. Allen then allowed Garcia's wife into the room and told Applicant to repeat to his wife the statements he had made during the interview. *Id.* at 16. Garcia claims that ten or fifteen seconds of the interview were not on the videotape

12

and during that period Allen told him that if he confessed, he would be able to leave after he offered apologies to the victims. *Id.* Garcia also said that Allen fabricated his confession. *Id.* at 36.

## Findings of the State Courts

At the conclusion of the hearing, and after viewing the videotape and the testimony offered by Applicant and his witnesses, the trial court issued a ruling on the motion to suppress. The court noted that there were "inconsistencies" in Applicant's testimony and credibility issues. v. 3 at 12. The court concluded that at no time was there an indication that Applicant was "in custody." *Id.*[4] The CCA agreed. The appellate court noted that the interview did not take place at a police station, but rather a social services center. The detective informed Applicant that he do not need to answer any questions. Applicant was not restrained or ever told he could not leave. The detective never threatened Applicant and spoke in a calm manner. *Answer* [#15] Ex. D at 5-6. Therefore, *Miranda* warnings were not necessary. *Id.* at 6.

## Custody Requirement

Applicant asserts that the trial court erred in finding that he was not "in custody" during the interview with Detective Allen. *Application* [#3] at 9. Prior to initiating a custodial interrogation, law enforcement personnel must advise the suspect of the possible use of his statements against him and his right to have counsel present during the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 468-71 (1966). However, police officials are not required

---

[4] Although the trial court stated that a written order would follow his oral findings, no such order appears in the record. *Id.*

to give *Miranda* warnings to everyone they question. *United States v. Erving L.,* 147 F.3d 1240, 1246 (10th Cir. 1998). *Miranda* warnings are only required when the defendant is in custody and subject to interrogation. *Miranda*, 384 U.S. at 444. Custody interrogations create "inherently compelling pressures" on the individual being interrogated. *Id.* at 467.

In determining whether a defendant was "in custody," the Court should examine (1) the circumstances surrounding the interrogation; and (2) would a reasonable person have felt he was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The court must use an objective test in resolving "the ultimate inquiry," which is whether there was a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation and quotation omitted); *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993). The *Griffin* court identified several non-exhaustive factors to consider in determining whether a defendant is "in custody." First, the extent to which the suspect is made aware that he is free to refrain from answering questions. *Griffin*, 7 F.3d at 1518. Second, the court should look to "the nature of questioning." The longer the questioning, the more likely the suspect would think he is not free to leave. *Id.* Finally, the court examines whether the interview took place in a "police dominated" atmosphere. *Id.* Circumstances that indicate such an atmosphere might include: separation of the suspect from family to provide moral support; isolation in a nonpublic room; threatening presence of several officers; display of a weapon by the officer; physical contact with the suspect; and "an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled." *Id.* at 1519. However, the court must still examine the "totality of the circumstances" and consider the "encounter as whole, rather than picking

some facts and ignoring others." *United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008).

*Miranda* "in custody" rulings by state court are not entitled to a presumption of correctness under 28 U.S.C. § 2254(d) because they involve mixed questions of law or fact requiring independent review by this court. *Thompson*, 516 U.S. at 112-13. In resolving this issue independent of the state court findings, the Court has examined the transcript of the videotaped interview of Applicant by Detective Allen, the trial testimony of Allen, Applicant's testimony at the suppression hearing, as well as the testimony of his wife and sister in law.[5]

The factual circumstances surrounding the interview of Applicant are essentially undisputed. At the beginning of the interview, Detective Allen informed Applicant that he did not have to answer his questions, but Applicant insisted that he wanted to talk to the detective. Applicant was not restrained during the interview and Detective Allen did not display a weapon. The detective never threatened Applicant. The interview was not conducted in a police station, but at a social services center. At the end of the interview, as the detective was about to leave the room, Applicant insisted he stay and wanted to continue the interview. After examining the totality of the circumstances, the Court finds that Applicant was not "in custody" for purposes of *Miranda* during the interview with Detective Allen, and is not entitled to habeas relief.

---

[5] In a habeas action, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Having considered the record described above, and noting that the Applicant proffers no evidence that lies outside the Court finds no need for further hearing.

Accordingly, the Applicant for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [#3] is **DENIED**. It is FURTHER ORDERED that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right. The Clerk of the Court shall close the case.

Dated this 6th day of July, 2010

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge